UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LERNER DAVIS, individually and on behalf of her deceased son, Lester Cook

CIVIL ACTION

VERSUS

NO. 17-6325

FORTERRA PIPE AND PRECAST, LLC

SECTION "R" (2)

## ORDER AND REASONS

Before the Court is defendant's motion for summary judgment.[1] Because the Court finds that Lester Cook was a borrowed employee of defendant, plaintiff's complaint is barred by the exclusivity provisions of the Louisiana Workers' Compensation Act. The Court therefore grants defendant's motion.

## I.    BACKGROUND

This case arises out of a fatal workplace accident.[2] On January 19, 2016, Lester Cook began working as a temporary employee for defendant Forterra Pipe and Precast, LLC, at Forterra's plant in New Orleans,

---

[1]     R. Doc. 20.
[2]     R. Doc. 9-3.

Louisiana.[3]  Cook was assigned to work at the Forterra plant by Lofton

Staffing Services, a temporary staffing agency.[4]  Lofton commonly selected

and assigned temporary employees like Cook to work at the Forterra plant.[5]

On February 2, 2017, Cook was assigned to the box cutting station at

the Forterra plant.[6]  Cook left the box cutting station to go to the pipe

machine area.[7] While in the pipe machine area, Cook climbed up onto a piece

of machinery known as a "pipe jacket."[8]  No one instructed Cook to climb

onto the pipe jacket.[9]  Cook then "fell into an opening in the . . . pipe

machine," and suffered severe injuries as a result.[10]   He died from his

injuries on February 16, 2017.[11]  Plaintiff Lerner Davis is Cook's mother.[12]

On May 18, 2017, plaintiff filed suit in state court asserting claims for

wrongful death, survival, and loss of consortium.[13]   On June 29, 2017,

Forterra removed this action on the basis of diversity of citizenship.[14]

---

[3]     R. Doc. 20-1 at 1 ¶ 1; R. Doc. 37-1 at 1 ¶ 1.
[4]     R. Doc. 20-3 at 2; R. Doc. 37 at 2.
[5]     R. Doc. 20-1 at 1 ¶ 4; R. Doc. 37-1 at 2 ¶ 4.
[6]     *See* R. Doc. 9-3 at 2 ¶ 4; R. Doc. 20-1 at 2 ¶ 12; R. Doc. 37-1 at 3 ¶ 12.
[7]     R. Doc. 20-1 at 2 ¶ 12; R. Doc. 37-1 at 3 ¶ 12.
[8]     R. Doc. 20-1 at 2 ¶ 13; R. Doc. 37-1 at 4 ¶ 13.
[9]     R. Doc. 20-1 at 2 ¶ 14; R. Doc. 37-1 at 4 ¶ 14.
[10]    R. Doc. 20-1 at 2 ¶ 15; R. Doc. 37-1 at 4 ¶ 15.
[11]    R. Doc. 37 at 2.
[12]    R. Doc. 9-3 at 4 ¶ 11.
[13]    *Id.* ¶¶ 11-14.
[14]    R. Doc. 1; R. Doc. 9.

Forterra now moves for summary judgment, arguing that plaintiff's claims are barred by the exclusivity provisions of the Louisiana Workers' Compensation Act (LWCA).[15]

## II.  LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could

---

[15]    R. Doc. 20.

not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (internal citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for

trial.  *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III.   DISCUSSION

Under the LWCA, an employee injured in an accident while in the scope and course of his employment is limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer.  *See* La. R.S. § 23:1032(A).  A so-called "borrowed employee" or "borrowed servant" is also limited to workers' compensation benefits.  *See Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243 (5th Cir. 1988).  Plaintiff therefore cannot bring her state law claims if Cook was Forterra's "borrowed employee."

"Under the borrowed employee doctrine, an employee of one company may become the servant of another if he is transferred by the former to the employ of the latter."  *Stephens v. Witco Corp.*, 198 F.3d 539, 542 (5th Cir. 1999).    Whether a plaintiff is a borrowed employee for workers' compensation purposes is "a legal issue for the court to decide."  *Sanchez v. Harbor Constr. Co., Inc.*, 968 So. 2d 783, 786 (La. App. 4 Cir. 2007).

5

Louisiana courts and the Fifth Circuit have fashioned a ten-factor test to determine this question. *U.S. Fire Ins. Co. v. Miller*, 381 F.3d 385, 388 (5th Cir. 2004); *Melancon*, 834 F.2d at 1244. These factors are:

1) Who has the right of control over the employee beyond mere suggestion of details or cooperation?

2) Whose work is being performed?

3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4) Did the employee acquiesce in the new work situation?

5) Did the original employer terminate his relationship with the employee?

6) Who furnished the tools and the place of performance?

7) Was the new employment over a considerable length of time?

8) Who had the right to discharge the employee?

9) Who had the obligation to pay the employee?

10) Who selects the employees?

*Miller*, 381 F.3d at 388. The Fifth Circuit has at various times emphasized nearly all of the factors. *Compare id.* at 385 (noting that the Fifth Circuit "has historically considered the fifth, eighth, ninth, and tenth factors to be the most essential"), *with Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375,

376 (5th Cir. 1985) (emphasizing the first, fourth, fifth, sixth, and seventh factors). It is nonetheless clear that courts in this circuit have consistently placed the most emphasis on whether the alleged borrowing employer had a right to control the employee. *See, e.g.*, *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986) ("[C]ourts place the most emphasis on the first factor, control over the employee."); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969) ("The factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship . . .").

The Court will now consider each of the ten factors.

*1. Who has the right of control over the employee beyond mere suggestion of details or cooperation?*

Determination of the control factor requires the Court to distinguish "between authoritative direction and control, and mere suggestion as to details." *Ruiz*, 413 F.2d at 313. Critical to this factor is a determination of which party "directly supervises the employee while the work is being performed." *Sanchez*, 968 So. 2d at 786.

It is undisputed that Forterra, and not Lofton, supervised and controlled Cook's day-to-day work.[16] Lofton's corporate representative,

---

[16]    R. Doc. 20-7 at 2; R. Doc. 20-8 at 2; R. Doc. 37-2 at 70-72.

Gene Lemoine, testified that once Lofton placed an employee with Forterra, Forterra solely controlled how and when the employee performed his work.[17] Michael McCulloch, the Production Supervisor at the Forterra plant, and Timothy Jones, the Director of Operations for the plant, both state in affidavits that Forterra provided training, supervision, and direction to all temporary employees that Lofton provided.[18]  No Lofton employees were routinely at the Forterra plant for the purposes of monitoring, supervising, or training the workers.[19] McCulloch and Jones also state that Forterra solely controlled the sections of the facility where work would be performed, and identified the jobs Lofton's employees would perform.[20]  This type of work arrangement indicates Cook was a borrowed employee. *See Hotard v. Devon Energy Prod. Co. L.P.*, 308 F. App'x 739, 742 (5th Cir. 2009) (control over employee is present when employee reports only to an officer of the borrowing employer on the jobsite); *Miller*, 381 F.3d at 388-89 (finding that a borrowing employer exercised control over an employee when the only individuals who could be considered the employee's day-to-day supervisors were officers of the borrowing employer); *Melancon*, 834 F.2d at 1245

---

[17]    R. Doc. 37-2 at 71-72.
[18]    R. Doc. 20-7 at 2; R. Doc. 20-8 at 2.
[19]    *Id.*
[20]    *Id.*

(finding control over an employee when only the borrowing employer "told him what work to do[] and when and where to do it").

Plaintiff argues that Forterra never exerted authoritative control over Cook because Cook was still bound to adhere to certain policies promulgated by Lofton, such as Lofton's antidiscrimination, harassment, retaliation, and safety guidelines.[21]  But plaintiff's evidence is not probative of the question of control.  The relevant inquiry is instead who supervised Cook's activities at the jobsite, and the undisputed evidence establishes that it was Forterra who provided this day-to-day supervision.  The first factor therefore supports a finding that Cook had the status of a borrowed employee.  *Cf. Tanner v. Bunge Corp.*, No. 03-3243, 2004 WL 2297469, at *3 (E.D. La. Oct. 12, 2004) (finding that the supposed borrowing employer did not exercise control when officers of the lending employer were present at the jobsite supervising the employee's work).

### 2. *Whose Work is Being Performed?*

It is undisputed that on the day of the accident Cook was performing Forterra's manufacturing work at the Forterra plant.[22]  Plaintiff contends that this factor nonetheless weighs in its favor because Cook's work at the

---

[21]    R. Doc. 37 at 7-8.
[22]    R. Doc. 20-1 at 2 ¶¶ 12-15; R. Doc. 37-1 at 3-4 ¶¶ 12-15.

Forterra plant benefited both Forterra and Lofton.[23]  But the inquiry for this factor is whose work Cook was performing, not who received ancillary benefits from his labor.  There is no dispute that Lofton's sole business is staffing temporary employees at other businesses.[24]  Cook never performed that type of work.  This factor thus weighs in favor of a finding that Cook had the status of a borrowed employee.

3.      *Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?*

"In deciding this factor courts have looked to contractual provisions and the behavior of the parties to determine whether an understanding existed."  *LeBlanc v. AEP Elmwood LLC*, 946 F. Supp. 2d 546, 551 (E.D. La 2013) (citing *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 677 (5th Cir. 1993)).  A written contract between the borrowing and lending employers is not necessary, as long as there is evidence of an implicit agreement.  *See, e.g.*, *Miller*, 381 F.3d at 389.  Here, on October 2, 2014, Lofton entered into a written staffing agreement with Hanson Pipe & Precast.[25]  The agreement stipulated that when Hanson requested a temporary worker, Lofton would identify its workers under contract who were "best qualified to perform the

---

23      R. Doc. 37 at 8-9.
24      R. Doc. 20-5; *see also* R. Doc. 37-2 at 68.
25      R. Doc. 20-5.

work indicated by [Hanson]."[26]   Hanson in turn had the right to reject or terminate "for any reason and in its sole discretion" any worker Lofton provided.[27]   Pursuant to the agreement, Hanson would also "sign time slips presented to it" by the temporary workers, and pay Lofton the "hourly rate" for those hours worked plus a "markup."[28]

McCulloch and Jones both state in their affidavits that Hanson later changed its name to Forterra Pipe and Precast, LLC, and that Forterra continued to receive temporary workers from Lofton pursuant to this same staffing agreement.[29]  Plaintiff has not provided any evidence suggesting that Hanson was not the predecessor corporation to Forterra.  Lofton's corporate representative in fact testified that Lofton continued to provide Forterra with laborers "in the same fashion" after Forterra changed its name.[30]   This evidence establishes that at the time of Cook's accident, there was an understanding between the parties that Forterra would hire temporary employees from Lofton, and that Forterra had the right to reject or terminate any employees Lofton sent.  This factor therefore weighs in Forterra's favor.

---

[26]     *Id.* at 1.
[27]     *Id.*
[28]     *Id.* at 2.
[29]     R. Doc. 20-7 at 2; R. Doc. 20-8 at 1-2.
[30]     R. Doc. 37-2 at 25.

*4.    Did the employee acquiesce in the new work situation?*

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them." *Brown*, 984 F.2d at 678. The undisputed evidence in the record indicates Cook acquiesced in his work with Forterra, and plaintiff concedes this point.[31] This factor therefore also supports a finding that Cook had the status of a borrowed employee.

*5.    Did the original employer terminate his relationship with the employee?*

The fifth factor "does not ask whether the lending employer severed its relationship [with the employee] completely." *Miller*, 381 F.3d at 390. Rather, courts examine the extent of the ties between the lending employer and employee "while the borrowing occurred." *Id.*; *Capps*, 784 F.2d at 617-18 (complete termination of relationship not required because such a requirement "would effectively eliminate the borrowed employee doctrine"). The Fifth Circuit has instructed that a relationship is terminated for the purposes of this factor when the lending employer has no day-to-day contact with the employee, and the employee is supervised at the jobsite only by the borrowing employer. *Hotard*, 308 F. App'x at 742; *Tamez v. Anadarko Petroleum Corp.*, No. 15-4941, 2017 WL 4351527, at *9 (E.D. La. Oct. 2, 2017)

---

[31]    R. Doc. 37 at 9.

(finding termination when plaintiff had little contact with lending employer, plaintiff was supervised entirely by borrowing employer, and borrowing employer had the right to discharge plaintiff at any time).

As addressed earlier, no employees of Lofton were routinely present at the Forterra plant. The record indicates that only Forterra's officers supervised temporary workers' daily activities.[32] The record also establishes that Forterra performed all on-site training, and that all temporary workers were subject to Forterra's safety guidelines and procedures.[33]

Lofton's relationship with Cook was not completely severed during his time working for Forterra. First, Cook was still subject to Lofton's antidiscrimination, harassment, retaliation, and safety guidelines.[34] Second, Forterra did not have the right to reassign Cook, or any of Lofton's temporary workers, to duties not performed by general laborers.[35] But because Forterra exclusively directed the scope of Cook's work, Lofton was not aware of Cook's day-to-day activities.[36] Lofton performed only quarterly

---

[32]    R. Doc. 20-7 at 2; R. Doc. 20-8 at 2.
[33]    *Id.*
[34]    R. Doc. 37-2 at 49-55.
[35]    *Id.* at 80 (Lofton corporate representative testifying that Forterra did not have the right to "take" a temporary employee "outside" of the role for which he was provided).
[36]    *Id.* at 77.

site inspections of the Fonterra plant.[37]   Lofton therefore had very little practical enforcement power over Cook during the periods in which he worked for Forterra.

While Lofton retained these ties to Cook, they are insignificant in light of the Fifth Circuit's determination that a borrowing employer's exclusive supervision of an employee's day-to-day activities is sufficient to find a termination of the relationship with the lending employer.  *Capps*, 784 F.2d at 617-18; *Hotard*, 308 F. App'x at 742.  In light of this precedent, the Court finds that this factor weighs in favor of a finding that Cook had the status of a borrowed employee.

> 6. *Who furnished the tools and the place of performance?*

Forterra furnished all of the tools that Cook used at the plant, and all of Cook's work took place at the Forterra plant.[38]  Plaintiff concedes that the record establishes that Forterra furnished the tools and the place of performance.[39] This factor therefore weighs in favor of finding that Cook was a borrowed employee.

---

[37]    *Id.* at 54.
[38]    R. Doc. 20-7 at 2; R. Doc. 20-8 at 2.
[39]    R. Doc. 37 at 10.

*7.* *Was the new employment over a considerable length of time?*

Cook was working at Forterra's plant for over one year before the date of his accident.[40]  Plaintiff concedes, and the Court anyway finds, that this constitutes a considerable length of time.[41]

*8.* *Who had the right to discharge the employee?*

The proper focus under this factor is whether the supposed borrowing employer "had the right to terminate [the employee's] services with itself." *Capps*, 784 F.3d at 618.  The record establishes that Forterra had this right. Angelle Hollier, Lofton's corporate operations manager, states in an affidavit that "Forterra, at all times, retained the power to dismiss, discharge or terminate Mr. Cook from his position at Forterra."[42]  Lofton's corporate representative similarly testified that Forterra had the right to terminate Cook's employment with Forterra.[43]  This factor therefore also weighs in favor of finding that Cook had the status of a borrowed employee.

---

[40]     R. Doc. 9-3 at 2 ¶ 4; R. Doc. 20-1 at 1 ¶ 1; R. Doc. 37-1 at 1 ¶ 1.
[41]     R. Doc. 37 at 10.
[42]     R. Doc. 20-9 at 2.
[43]     R. Doc. 37-2 at 76.

## 9.     Who had the obligation to pay the employee?

The determinative question for this factor is whether Forterra furnished the funds from which Cook was ultimately paid.  *Melancon*, 834 F.2d at 1246.  McCulloch states in his affidavit:

> Forterra prepared the time sheets for its temporary employees. The temporary employees approved the time sheets, and sent them to Lofton Staffing, pursuant to the agreement between Lofton Staffing and Forterra.  Forterra paid Lofton Staffing the temporary employees' hourly rates for the time shown on the time sheets plus a mark-up.  Lofton Staffing then cut payroll checks to the temporary employees.[44]

Lofton's corporate representative confirmed that Lofton paid the temporary workers an amount based upon the time sheets the employees submitted, and that Lofton invoiced Forterra for those amounts.[45]  Plaintiff does not present any evidence contradicting this description of Forterra's relationship with Lofton.  This payment arrangement is very similar to the arrangements in *Brown* and *Hotard*, which the Fifth Circuit found weighed in favor of borrowed employee status.  *See Brown*, 984 F.2d at 679 (lending employer paid the plaintiff, but "his pay was based on time tickets that had to be verified daily" by the borrowing employer); *Hotard*, 308 F. App'x at 741-42 (borrowing employer approved the plaintiff's time sheets and paid the

---

[44]     R. Doc. 20-7 at 2; *see also* R. Doc. 20-5 at 1.
[45]     R. Doc. 37-2 at 23-24.

lending employer an hourly rate for the plaintiff's work, and the lending employer then cut the plaintiff a check). The Court therefore finds this factor also supports a finding that Cook was a borrowed employee.

### 10. Who selects the employees?[46]

Lofton's corporate representative testified that when Forterra needed a temporary employee, it asked Lofton to provide individuals who were qualified to complete a specific scope of work.[47] Lofton then selected the specific individuals for Forterra's task.[48] But as addressed earlier, Forterra had the right under the staffing agreement to "reject any person provided" by Lofton and could "at any time and for any reason and in its sole discretion terminate the services" of a temporary employee.[49] The Court finds that this factor is neutral in determining whether Cook had a borrowed employee status.

In summary, nine of the ten factors weigh in favor of finding that Cook was a borrowed employee of Fonterra at the time of the accident. The evidence overwhelmingly favors borrowed employee status. Plaintiff's

---

[46] Courts in the Fifth Circuit do not always apply this tenth factor. *Compare Miller*, 381 F.3d 385 (applying all ten factors), *with Melancon*, 834 F.2d 1238 (applying only the first nine factors). The Court will nonetheless apply all ten factors.
[47] R. Doc. 37-2 at 21.
[48] *Id.*
[49] R. Doc. 20-5 at 1.

recovery is therefore limited to workers' compensation benefits pursuant to the LWCA, and her state law claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion is GRANTED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this ___5th___ day of November, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE